IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANICE BRADY and DUNCAN DUVAL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:09-CV-130 |
| | § | |
| DENTON COUNTY ELECTRIC COOPERATIVE, INC. d/b/a COSERV, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING COUNTERCLAIM PLAINTIFFS' MOTION TO REMAND

The following are pending before the court:

1. Counterclaim Plaintiffs' motion to remand and memorandum in support of motion (docket entry #7);

2. CoServ's response to motion to remand and memorandum in support (docket entry #12);

3. Counterclaim Plaintiffs' reply in support of motion to remand (docket entry #14); and

4. CoServ's sur-reply in opposition to Counterclaim Plaintiffs' motion to remand (docket entry #19).

Having considered the Counterclaim Plaintiffs' motion to remand and the responsive briefing thereto, the court finds that the motion should be granted.

On January 6, 2009, the Counter-Defendant, Denton County Electric Cooperative, Inc. d/b/a CoServ Electric ("CoServ") filed a petition[1] in the 211th Judicial District Court of Denton County, Texas, seeking to compel a pretrial oral deposition of Counter-Plaintiff, Janice K. Brady ("Ms.

---

[1] The initial TEX. R. CIV. P. 202.1 petition will be referred to as the "first petition," in keeping with the most logical chronology of the lawsuits.

Brady") as permitted under TEX. R. CIV. P. 202.1. Ms. Brady filed her first counterclaim against CoServ on February 6, 2009 seeking a declaratory judgment stating that (1) certain CoServ policies were in violation of Texas state law, and (2) CoServ may not declare Ms. Brady in breach, nor terminate her membership rights, as a result of the alleged violation of these policies.[2] Specifically, CoServ and its board of directors have adopted Policy No. 310, which provides in pertinent part:

> C. Information which is of a confidential corporate nature will not be provided to the membership such as:
>
>> 1. The names and addresses or telephone numbers of members, past and/or current.

Brady's Original Counterclaim for Declaratory Judgment p. 3, ¶ 12-15. Ms. Brady, during the course of her membership, acquired the "confidential corporate" information of approximately 2% of the cooperative's eligible voting members. It is the aforementioned Policy No. 310 which Ms. Brady challenges as contrary to Texas state law requiring the transparency of voting members.

> A. . . . a corporation shall prepare an alphabetical list of the names of all its voting members who are entitled to notice of the meeting. **The list must show the address and number of votes each voting member is entitled to cast at the meeting.** The corporation shall maintain, through the time of the members' meeting, a list of members who are entitled to vote at the meeting but are not entitled to notice of the meeting. . . .
>
> B. Not later than two (2) business days after the date notice is given of a meeting for which a list was prepared, as provided by Section A of this article, and continuing through the meeting, **the list of voting members must be available for inspection by any member entitled to vote at the meeting for the purpose of communication with other members** concerning the meeting at the corporation's principal office or at a reasonable place identified in the meeting notice in the city where the meeting will be held. . . .
>
> C. The **corporation shall make the list of voting members available at the**

---

[2] The first counterclaim, even though it is the instigation of the instant litigation, will be referred to as the "second petition."

**meeting, and any voting member or voting member's agent or attorney is entitled to inspect the list at any time during the meeting** or any adjournment.

Tex. Civ. St. Art. 1396-2.11B (emphasis added). Ms. Brady, Duncan Duval, and Paul Confer (collectively "Plaintiffs") filed an amended counterclaim and petition of intervention on behalf of themselves and those similarly situated on February 18, 2009.[3] Plaintiffs sought, *inter alia*, class certification, declaratory relief, injunctive relief, and damages for breach of fiduciary duties, breach of contract, conversion, and improper use of Plaintiffs' property. Plaintiffs' Amended Counterclaim and Original Petition of Intervention, pp. 43-44, ¶¶ a-o. On March 11, 2009, Plaintiffs filed their Second Amended Counterclaim and Petition of Intervention which alleged the same claims brought in the third petition except Mr. Confer was excluded.[4] In response to the third and fourth petitions, CoServ filed its Notice of Removal.

As a preliminary matter, it should be pointed out that CoServ filed the first petition in state court to compel the testimony of Ms. Brady for investigation into a potential suit CoServ might have against an unknown third party for the disclosure of CoServ's confidential information. The petition was initiated pursuant to TEX. R. CIV. P. 202.1. Such actions are not removable. *In re Enable Commerce, Inc.,* 256 F.R.D. 527, 530 (N.D. Tex 2009); *Texas v. Real Parties in Interest*, 259 F.3d 387 (5th Cir. 2001). Rule 202.1 is not a separate and distinct action; it is filed "in aid of and incident to an anticipated suit." *Lee v. GST Transp. Sys. LP.*, No. 05-08-00118-CV, ___ S.W.3d ___, 2008 WL 4416174, *2 (Tex. App.– Dallas 2008); *see also In re Enable Commerce, Inc.*, 256 F.R.D. at 528-529. In the anticipated suit, although primarily against a "John Doe" for the release of

---

[3] The amended counterclaim and petition of intervention will be referred to as the "third petition."

[4] This second amended counterclaim and original petition of intervention will be referred to as the "fourth petition."

confidential information, CoServ does not disclaim the possibility that the suit might encompass more than just "John Doe." Petitioner's Verified Petition to Take Rule 202 Deposition: p. 1, ¶ 3 & p. 4, ¶ 13. Thus, in order to determine the proper jurisdiction for the suit, the court must look to the third and fourth petitions and the issues surrounding the claims therein.

CoServ presents three bases for federal jurisdiction in its Notice of Removal– (1) removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d), (2) federal question under 28 U.S.C. § 1331 regarding federal tax law, and (3) invoking the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas under 28 U.S.C. § 1452(a).

CoServ, in their Notice of Removal, claims that removal is appropriate under 28 U.S.C. § 1452(a). Section 1452(a) states that removal of any claim or cause of action in a civil action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under 1334 [bankruptcy cases & proceedings]" is appropriate. 28 U.S.C. 1452(a). Section 1334 grants jurisdiction to the federal district courts over "four types of bankruptcy matters: (1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." *In re U.S. Brass Corp.* 301 F.3d 296, 303 (5th Cir. 2002), citing 28 U.S.C. § 1334(a)-(b). "Cases under title 11" refers to the bankruptcy petition itself. *In re U.S. Brass Corp.* 301 F.3d at 304. Proceedings "arising under" title 11, proceedings "arising in" a case under title 11, and proceedings "related to" a case under title 11 " 'operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'" *In re U.S. Brass Corp*. 301 F.3d at 304, quoting *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). "A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have

any effect on the estate being administered in bankruptcy.' " *Id.*, citing *In re Wood*, 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). While there is not an exhaustive list of claims which arise in, or relate to a bankruptcy proceeding, a claim is to be considered a core proceeding "if it invokes a substantive right provided by Title 11 or . . . could arise only in the context of a bankruptcy case." *In re U.S. Brass Corp.*, 301 F.3d at 304, (quoting *In re Wood*, 825 F.2d at 97). In making this determination, each specific claim alleged must be analyzed separately to determine whether it invokes a substantive right provided by Title 11. 11 U.S.C. § 101 et. seq.; *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 116-117 (N.D. Tex. 2006). Applying the standards above, the court concludes that each of the claims Plaintiffs allege– breach of duty of agent or trustee, breach of statutory duties, breach of contract, conversion, oppression, and fraudulent concealment, are firmly based in Texas state law and invoke no substantive right provided under Title 11. Therefore, the Plaintiffs' claims do not rise to the level of core proceedings.

CoServ points to the Joint Plan of Reorganization (the "Plan") in an attempt to confer federal jurisdiction under 28 U.S.C. § 1452. However, this argument is not persuasive. The Plan states, "CoServ Investments and CoServ Utility shall, as Reorganized Debtors, continue to exist after the Effective Date as limited partnerships with all powers of a limited partnership under applicable law." Findings of Fact, Conclusions of Law and Order Confirming the Joint Plan of Reorganization for Denton County Electric Cooperative, Inc. d/b/a Coserv Electric, Coserv Investments, L.P. f/k/a DCE Services, Inc., and Coserv Utility Holdings, L.P. p. 12, ¶ 9. The Plan only identifies the structure of the entities which will survive the Plan; it does not convey continuing jurisdiction in the bankruptcy court for all matters concerning the actions of these limited partners.

The Plan further states that "[CoServ] shall continue to exist after the Effective Date as a not-

for-profit electric cooperative corporation, with all powers of such corporation under applicable law." *Id*. Here, the applicable law is clearly the Texas state law under which the entities were formed. Tex. Util. Code. Ann.§ 161.121 (2009) ("An electric cooperative may: (1) sue and be sued in its corporate name"); Tex. Civ. St. Ann. Art. 6132b-3.05 (2009) ("A partnership may sue and be sued in the name of the partnership."); *State ex rel. Southwestern Gas & Elec. Co. v. Upshur Rural Elec. Co-op. Corp.,* 156 Tex. 633, 638, 298 S.W.2d 805, 807 (Tex. 1957). Plaintiffs' claims are against Texas created entities under state law causes of actions.

Further, "the Fifth Circuit interprets . . . post-confirmation jurisdiction very narrowly." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, No. MDL-1446, 2008 WL 3509840, *4 (S.D. Tex. 2008). " 'After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.' " *Id.* (citing 11 U.S.C. § 1141(b)). Neither party alleges that Plaintiffs were involved in the bankruptcy proceedings. There was no pending litigation or dispute between the parties at the date of the reorganization. Plaintiffs mention the bankruptcy case as a description of background facts only. Counterclaim Plaintiffs' Motion to Remand and Memorandum in Support of Motion, p. 19. CoServ states the Plan was confirmed on September 11, 2002, and the bankruptcy case was closed on March 2, 2005. The instant action was filed on February 6, 2009, and all allegations in the Plaintiffs' petition reference actions taken after the bankruptcy case was closed. Therefore, the Bankruptcy Court has no jurisdiction. *In re Enron,* 2008 WL 3509840, *4; *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001).

CoServ further claims that removal is appropriate under federal question jurisdiction pursuant to 28 U.S.C. § 1331 by implication of a substantial question of federal tax law. The question of

whether federal question jurisdiction exists is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only if a federal question is presented on the face of a properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Since plaintiffs are the "master[s] of the claim," they may bring or avoid bringing federal claims. *Id.* Thus, a plaintiff may rely solely on state law to avoid federal question jurisdiction. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986). CoServ, however, attempts to implicate a different form of federal question jurisdiction. CoServ argues that this court should assert jurisdiction over state law claims that turn on substantial questions of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The Notice of Removal points to several instances in the petition where Plaintiffs utilize federal tax law as an illustration of cooperative principals of divesting profits to the members and not operating as a for-profit endeavor. Notice of Removal p. 6, ¶ 21. As the Supreme Court has made clear, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc.* 478 U.S. at 813.

> [F]ederal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Here, the federal issue is not substantial. The Plaintiffs' claims hinge on state law causes of action and rest on the formation of the entity under the Electric Cooperative Corporation Act, a Texas statute ("ECCA"). Tex. Util. Code. Ann. § 161.001 *et seq.* Plaintiffs relied on federal tax law as merely an illustration of cooperative principals, not the implication of federal law. Simply because Plaintiffs' petition

contained references to the Tax Court's explanation of cooperatives does not immediately authorize removal. *Halfmann v. USAG Ins. Servs., Inc.*, 118 F.Supp.2d 714, 721 (N.D. Tex. 2000).

The final basis upon which CoServ removed the Plaintiffs' case is pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Due to the nature and substance of the class action alleged in the third petition (class size, diversity, and the issues relating to non-members), CoServ contends that this court has jurisdiction. It is well settled that a removing party has the burden of proof to establish a federal court's jurisdiction. *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). CAFA does not seek to alter this burden on the removing party. *Joseph v. Unitrin, Inc.*, 2008 WL 3822938, *4 (E.D. Tex. 2008); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006). Once the removing party has established jurisdiction under CAFA, the burden shifts to the opposing party to show the applicability of §§ 1332(d)(3)-(5) exceptions by a preponderance of the evidence. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* ("*Preston II*"), 485 F.3d 804, 814 (5th Cir. 2007); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006). This shift of the burden is appropriate because the "plaintiffs are better positioned than defendants to carry this burden." *Unitrin*, 2008 WL 3822938 at *4, quoting *Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006). Furthermore, "the longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA." *Unitrin,* 2008 WL 3822938 at *4, quoting *Preston II,* 485 F.3d at 813.

Plaintiffs claim that CAFA does not confer jurisdiction on this court because of "the internal affairs exception."

> Paragraph (2) shall not apply to any class action that solely involves a claim. . . that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; . . . .

28 U.S.C. § 1332(d)(9)(B). This provision of CAFA is echoed in § 1453 regarding the removal of class actions. 28 U.S.C. 1453(d)(2). According to CAFA's legislative history, "internal affairs" are "matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders." S. REP. No. 109-14, at 45, *as reprinted in* 2005 U.S.C.C.A.N. 3, 43, citing *Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982). The legislative history further provides that the use of "other form of business enterprise" includes limited liability companies, limited liability partnerships, business trusts, partnerships and limited partnerships. *Id*. This nonexclusive listing of business entities appears to include an "Electric Cooperative" as defined in the ECCA. Tex. Util. Code. Ann. § 161.002 ("a **corporation** that is organized under this chapter or that becomes subject to this chapter." (emphasis added)). CoServ further identifies itself as a "not-for-profit electric-cooperative corporation owned by its members." Notice of Removal p. 1, ¶ 1. Each of Plaintiffs' claims necessarily turn on questions which "relate to" the internal affairs of the corporation and "arise under" the laws of Texas, thereby invoking the internal affairs exception to CAFA. Tex. Util. Code. Ann. § 161.001 *et seq*.

Alternatively, CAFA prevents the federal district court from exercising subject matter jurisdiction under the home state exception, where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Plaintiffs' petition states that CoServ's current membership consists of approximately 142,000 members. See, e.g., Plaintiffs'

Second Amended Counterclaim and Petition of Intervention p. 5, ¶ 19; Amended Counterclaim and Original Petition of Intervention p. 6, ¶ 20.

The district court "has wide, but not unfettered, discretion" in determining the evidence and facts to utilize in making its decision on jurisdiction. *Unitrin,* 2008 WL 3822938 at *5; *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). Initially, the court may rely on facts contained in the petition, notice of removal, and motion to remand. *Unitrin,* 2008 WL 3822938 at *5. If the district court determines these facts to be lacking, it may conduct limited fact-finding to ascertain the applicability of CAFA jurisdictional exceptions. These fact-finding missions are similar to those permitted under other jurisdictional statutes. S. REP. No. 109-14, at 44; *Unitrin,* 2008 WL 3822938 at *5.

CoServ argues that Plaintiffs failed to show that greater than two-thirds of the aggregate putative class members reside in Texas and have the intent to remain in Texas. CoServ's Response to Motion to Remand and Memorandum in Support, p. 11. Plaintiffs' motion for remand makes extensive reference to the 1990 and 2000 census data as support for the citizenship of the class members and the valid home state exception to CAFA. Counterclaim Plaintiffs' Motion to Remand and Memorandum in Support of Motion, p. 11. The two putative classes proposed by Plaintiffs are the Voting Subclass and the Equity Subclass. The Voting Subclass consists of "[a]ll current members of Denton County Cooperative, Inc. entitled to vote in board elections," and the Equity Subclass consists of "[a]ll current and former members who have furnished revolving equity capital that has been taken in whole or in part by Defendant's 'discounting' program. . ." Amended Counterclaim and Original Petition of Intervention p. 34, ¶ 123. For purposes of CAFA, the classes are analyzed in the aggregate to determine the threshold amounts. Here, two-thirds of the entire class, when added together, must be more likely than not Texas citizens. *Preston II*, 485 F.3d at 812. Plaintiffs

state that 92% of the current 142,000 members are "residential" and each of these members purchase electricity from within CoServ's area of operation. Counterclaim Plaintiffs' Motion to Remand and Memorandum in Support of Motion, p.10. Utilizing the available census data, Plaintiffs further note that there has been no dramatic change in the migration patterns of Texas residents. *Id*. In fact, much of the data illustrates the clear trend of Texas residents to remain within Texas. *Id*. at 11. Less than 7% of the county population which CoServ provides electricity for moved out of state during the period of time for which the census data was provided. *Id*. Counterclaim Plaintiffs' Motion to Remand and Memorandum in Support of Motion, Exhibits G-M. Overwhelmingly, in the two decades for which information was provided, more than two-thirds of those who had changed houses had moved to another location in Texas. Furthermore, nearly 70% of those who had changed homes had remained within the same county. Counterclaim Plaintiffs' Motion to Remand and Memorandum in Support of Motion, p.11.

Citizenship, for CAFA's exception purposes, "must be analyzed as of the date the complaint or amended complaint was filed." 28 U.S.C. § 1332(d)(7); *Unitrin,* 2008 WL 3822938 at *5; *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.* ("*Preston I*"), 485 F.3d 793, 798 (5th Cir. 2007). The state in which a person establishes their domicile doubles as their state of citizenship in resolving diversity jurisdiction. *Unitrin,* 2008 WL 3822938 at *5; *Preston I*, 485 F.3d at 797, citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). District courts look at two factors in determining a person's domicile: residence and the intention to remain. *Unitrin,* 2008 WL 3822938 at *5*; *Preston I*, 485 F.3d at 798. "Residence alone is not the equivalent of domicile." *Unitrin,* 2008 WL 3822938 at * 5. However, presenting evidence of the person's residence raises a presumption of their domicile. *Unitrin,* 2008 WL 3822938 at *5; *Stine*, 213 F.2d at 448. Furthermore, "[t]here is

a presumption in favor of [a person's] continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect...." *Preston II*, 485 F.3d at 819.  Once this presumption is raised, the person is deemed a resident in the state where their domicile is located until it is rebutted with "sufficient evidence of change."  *Unitrin,* 2008 WL 3822938 at *5; *Acridge v. Evangelical Lutheran Good Samaritan Soc.,* 334 F.3d 444, 448 (5th Cir. 2003).

The Fifth Circuit specifically includes common sense as a factor to be included in determining citizenship of the class members. *Unitrin*, 2008 WL 3822938 at *6; *Preston II*, 485 F.3d at 819.  A reliance on the census data alone would be insufficient to make a determination concerning the citizenship of residents of the counties in which CoServ operates. *Preston II*, 485 F.3d at 819.  However, when this information is coupled with the membership data, common sense dictates that it is more likely than not that at least two-thirds of the aggregate putative class members are Texas citizens.

Based on the foregoing, the court hereby **GRANTS** Counter-Plaintiffs' motion to remand (docket entry #7). The court **REMANDS** this case to the 211th Judicial District Court of Denton County, Texas for further proceedings.

IT IS SO ORDERED.

**SIGNED this the 25th day of September, 2009.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE